# Illinois Official Reports

## Appellate Court

---

*Shamrock Chicago Corp. v. Wroblewski*, 2019 IL App (1st) 182354

---

| | |
|---|---|
| Appellate Court Caption | SHAMROCK CHICAGO CORPORATION, an Illinois Corporation, Plaintiff-Appellee, v. STEVEN M. WROBLEWSKI, DAVID J. WELLS, CHRISTOPHER ENGLAND, DONALD NOWAK, SKYLINE INDUSTRIAL CORPORATION, an Illinois Corporation, and Unknown Investors and Co-conspirators, Defendants (Skyline Industrial Corporation, Defendant-Appellant). |
| District & No. | First District, First Division<br>No. 1-18-2354 |
| Filed | December 31, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-M-36275; the Hon. David D. Roti, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part.<br>Cause remanded. |
| Counsel on Appeal | William J. Didier, of Didier Law Office, LLC, of Chicago, for appellant.<br><br>Matthew M. Saffar and John S. Saletta, both of Palatine, for appellee. |

Panel           JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Griffin and Justice Pierce concurred in the judgment and opinion.

## OPINION

¶ 1      Shamrock Chicago Corporation (Shamrock) sells antifreeze, motor oil, and heat transfer fluids. After a failed negotiation to sell Shamrock to a small group of its employees, those employees, according to Shamrock's complaint, misappropriated and then destroyed large swaths of financial and client data from Shamrock's computers. Using that information, the then-former employees formed their own company, Skyline Industrial Corporation (Skyline).

¶ 2      Shamrock sought ongoing disclosure of Skyline's bank statements and QuickBooks files. The trial court ordered Skyline to comply with Shamrock's request and appointed a facilitator in discovery to help enforce its order. Skyline, fearing interference with its new business if Shamrock became privy to its finances, refused to comply. The trial court found Skyline in "friendly contempt" and imposed a monetary penalty, vesting us with interlocutory jurisdiction. See Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016).

¶ 3      Skyline argues that the ongoing production of its bank statements and QuickBooks files is overbroad and includes information irrelevant to Shamrock's claims. Skyline also disputes the propriety of appointing a facilitator in discovery to assist the trial court in the oversight of Skyline's discovery compliance. We find the information Shamrock requested both relevant and integral to proving its claims. We also find no impediment to the trial court's appointment of a facilitator in discovery under either the discovery rules or case law interpreting them. We affirm the discovery order, but since Skyline appealed in good faith, vacate the contempt order.

¶ 4                                    Background

¶ 5      Shamrock has sold antifreeze, motor oil, and heat transfer fluids since 1974. John Dreamer, Sr. eventually became the sole shareholder. When John died, his wife, Annie Dreamer, became the sole shareholder. Annie, now incapacitated due to medical issues, is the sole beneficiary of a trust that holds all of Shamrock's stock.

¶ 6      At the time of the events giving rise to this litigation, Shamrock had five employees: John Dreamer, Jr., Les Kreifels, Steven Wroblewski (John Jr.'s nephew), David Wells, and Chris England. Wroblewski started working for Shamrock in 2006 and served as the vice president and secretary. Wells, a certified public accountant, started working for Shamrock in 2011, and served as Shamrock's chief financial officer. England also was an employee, though the record leaves his role vague.

¶ 7      The Dreamer family decided to sell Shamrock and offered Wroblewski and Wells the opportunity to make the first offer. Wroblewski and Wells submitted an offer that was financially acceptable but included "collateral terms" that the Dreamers would not accept. In "mid-August" 2017, Shamrock made a counteroffer, having revised some terms unrelated to the purchase price.

¶ 8      On September 1, 2017, Wroblewski and Wells "abruptly resigned." England resigned four days later. According to Shamrock's first amended complaint, the day before Wroblewski and

Wells resigned, they "had Beaver Shredding, Inc., deliberately destroy three double file boxes and perform one cabinet destruction service at Shamrock's headquarters" without anyone else's knowledge. The complaint also alleged that Wroblewski and Wells "had deliberately altered the network of computers" and "deleted large amounts of data from Shamrock's computer system." Wells also had "copied Shamrock's QuickBooks files" and other data from Shamrock's computers. Wroblewski, for his part, uploaded data from Shamrock's computers to the digital storage site Dropbox in the days leading up to his resignation.

¶ 9 After the resignations, Skyline "went live" with its own website. Shamrock alleges that Skyline's business is "exactly the same" as its own, and Skyline has been representing itself as Shamrock's successor business to customers and vendors. The complaint attaches a series of e-mails initiated by Wroblewski to Shell Corporation, one of Shamrock's vendors, in which Wroblewski requests an application for credit. In the e-mail chain, one of the Shell employees says, "Shamrock was just bought out by 2 of their employees and investors. Their new name is Skyline Industrial Corp." Later that month, a logistics company that Shamrock used "insisted numerous times" that it was waiting on a shipment of 5000 gallons of propylene glycol for one of Shamrock's customers. Shamrock did not know about the shipment. Later Shamrock learned Skyline had made the order.

¶ 10 Shamrock's complaint sets out 11 counts against various combinations of Wroblewski, Wells, England, Skyline, yet-unknown investors, and David Nowak, an accountant Shamrock employed for tax purposes. Many counts allege that the defendants "destroy[ed] electronic data, including but not limited to: Emails; Quickbook[s] files; Accounts Receivable; Accounts Payable; Client lists; Supplier invoices and pricing; Formula lists, and client histories." Before allegedly destroying those files, Shamrock alleges that defendants uploaded them to Dropbox.

¶ 11 Shortly after filing its complaint, Shamrock moved for a temporary restraining order (TRO). The motion for a TRO asked, among other things, that the court appoint "a receiver to monitor any substantial transactions engaged in by the defendants and in particular Skyline, Wroblewski, Wells, and England pursuant to 740 ILCS 160/8(3)(B)." The trial court granted Shamrock's motion and entered a TRO "[a]ppointing a receiver at Plaintiff's expense to monitor any substantial (*i.e.*, $20,000 or more) transactions engaged in by the defendants Skyline, Wroblewski, and England." The defendants petitioned this court's review of the TRO (see Ill. S. Ct. R. 307(d) (eff. Nov. 1, 2017)). We denied the petition.

¶ 12 Thereafter, the trial court entered an order appointing James Venetos, a certified public accountant, "to monitor Skyline's transactions." The court ordered Skyline to keep its "books and records current *** in the ordinary course of business" and to make its monthly bank statements available to Venetos within three days of their availability. The court's order also required Skyline to keep its QuickBooks current and provide Venetos a copy of its QuickBooks files every other week. The order permitted Skyline to password protect or encrypt its files and documents, as long as Venetos had access. The information turned over to Venetos remains subject to a protective order, which limits viewing to "attorney's eyes only."

¶ 13 Skyline filed a motion to vacate or modify the order appointing Venetos. The trial court denied the order and set a date by which Skyline had to turn over its QuickBooks files. After that date passed, Shamrock filed a petition for rule to show cause, alleging that Skyline "refus[ed] to provide the Quickbook[s] files and bank records to [the] monitor." In response, Skyline argued that the court's order was too broad and harmed Skyline by revealing its financial information to Shamrock. Alternatively, Skyline asked to be held in "friendly

contempt" to test the order's validity. The trial court granted Shamrock's petition for rule to show cause, found Skyline in indirect civil contempt, and imposed a $10 per day fine for continued noncompliance.

¶ 14                                                    Analysis

¶ 15    Skyline breaks its arguments into several discrete sections, but its contentions essentially challenge (i) the trial court's order for discovery of all of Skyline's financial and business records as overbroad and (ii) the trial court's appointment of Venetos to facilitate Skyline's production of bank transactions and QuickBooks files. Skyline also argues that we should vacate the contempt order, regardless of our conclusions.

¶ 16                                             *Scope of Review*

¶ 17    Shamrock argues that we cannot review the underlying discovery order, partly because the order holding Skyline in contempt constitutes the only order subject to review. Shamrock believes the orders are not discovery orders. Skyline asks us to review all the trial court's underlying orders back to the TRO entered in 2017. We disagree with both parties on the scope of the issues.

¶ 18    We reject Shamrock's argument. The law is well settled that when a contempt order based on a discovery violation is appealed, the underlying discovery order is also subject to review. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). We need to look at the contempt order to define the parameters of our analysis: "Defendant Skyline is found to be in indirect civil contempt and ordered to comply with the order dated May 22, 2018." The May 22 order required Skyline to comply with the April 18, 2018, discovery order. That order described Skyline's discovery obligations and Venetos's duties. Our review concerns only the contempt order and the trial court's April 18 order.

¶ 19    For much of the same reason, we reject the arguments Skyline makes attacking the TRO. Skyline's appeal, according to its briefs, relies on Rule 304(b)(5), which allows an interlocutory appeal of an order finding a person or entity in contempt and imposing a monetary penalty. Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). Rule 304(b)(5) provides limited jurisdiction that, as we said, involves just the contempt order and the underlying order on which it is based. See *Norskog*, 197 Ill. 2d at 69.

¶ 20    In addition, Shamrock argues that we should reject Skyline's appeal because the April 18 order is something other than a discovery order. According to Shamrock, the trial court did no more than exercise its equitable powers to appoint a "receiver," and Skyline's arguments do not address that harm. To the contrary, we find the April 18 order set out a process for discovery.

¶ 21    We acknowledge that both the parties and the trial court, through much of the litigation, referred to the position that Venetos would eventually occupy as a "receiver." But the order ultimately appointing Venetos and setting out his duties reveals a much narrower role.

¶ 22    Receivers have functions based on the relevant statutory schemes allowing for their appointment, but, generally, a receiver takes possession of and holds disputed assets pending resolution of the parties' claims. See *In re Marriage of Pick*, 167 Ill. App. 3d 294, 299 (1988) (collecting cases). Most critically, the trial court's order appointing Venetos left Wells and Wroblewski in complete control of Skyline and its finances. They were to continue to operate

"in the ordinary course of business" and were placed in charge of keeping the records current. Skyline had no obligation to transfer assets to Venetos for his control. Indeed, Venetos's duty related solely to collecting information—records of Skyline's banking and QuickBooks—and not assets.

¶ 23        The trial court appointed Venetos, at Shamrock's expense, to supervise Skyline's compliance. The parties have not cited an Illinois case. But see *Will v. Northwestern University*, 378 Ill. App. 3d 280, 287 n.6 (2007) (mentioning someone serving in similar capacity). Other courts, however, have made a succinct distinction between a "receiver," on the one hand, and a "monitor" or "facilitator in discovery," on the other. See *Vorachek v. Citizens State Bank of Lankin*, 461 N.W.2d 580, 584 (N.D. 1990) (describing difference between receiver and discovery monitor). There, the court described what it termed "a monitor" as a "watchdog" appointed to ensure the availability of the disputed information to all the parties. *Id.* That is the same role the trial court envisioned for Venetos, a role commonly referred to by judges in Illinois as "facilitator in discovery."

¶ 24        Mindful of these limitations, the question before us narrows considerably: Did the trial court err in appointing someone to facilitate the production of Skyline's bank records and QuickBooks files? We find that the court acted properly and within its discretion.


¶ 25                                        *Standard of Review*

¶ 26        Skyline and Shamrock dispute the applicable standard of review. Skyline argues that for contempt orders, an abuse of discretion should apply, and for the underlying discovery orders, which involve construction of the constitution and Illinois Supreme Court Rules, *de novo* review should apply. Shamrock contends that the underlying discovery orders are nonreviewable, and we can only review the indirect civil contempt order, which we should do using the manifest weight of the evidence standard.

¶ 27        We find that an abuse of discretion standard applies to both the contempt order and the underlying discovery order that led to Skyline's contempt.

¶ 28        We do not fault the parties for relying on disparate standards of review—both parties cite cases that apply their proposed standard. See *Brown v. Advocate Health & Hospitals Corp.*, 2017 IL App (1st) 161918, ¶ 10 ("The standard of review for a contempt order is abuse of discretion."). But see *Busey Bank v. Salyards*, 304 Ill. App. 3d 214, 217 (1999) ("the trial court's determination [that a party has committed indirect civil contempt] will not be overturned on appeal unless it is against the manifest weight of the evidence"). Our supreme court, in *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984), purported to resolve the question of whether contempt orders should be reviewed under abuse of discretion or manifest weight of the evidence. The court apparently applied both standards, concluding "that the trial court neither abused its discretion nor reached a decision contrary to the manifest weight of the evidence." *Id.* at 287. As the Second District has noted, our supreme court "has never expressly abandoned the *Logston* standard." *In re Marriage of Barile*, 385 Ill. App. 3d 752, 759 n.3 (2008).

¶ 29        We see no tension in the *Logston* rule. Instead, it makes explicit a system of double deference to the trial court in contempt proceedings. If the trial court's factual findings are in dispute, we review the record and only reverse those findings that are against the manifest weight of the evidence. If the trial court's factual findings are not in dispute or if those findings

are consistent with the manifest weight of the evidence, we review the contempt order for an abuse of discretion, considering the relevant facts.

¶ 30    This appellate deference two-step is consistent with the role typical to each standard of review. The abuse of discretion standard provides deference to the trial court's ultimate conclusions and allows reversal of rulings that are "arbitrary, unreasonable, fanciful, or where no reasonable person would take the view adopted by the circuit court." *Brown*, 2017 IL App (1st) 161918, ¶ 10. The manifest weight of the evidence standard provides deference to the trial court's fact-finding where "divergent inferences could have been drawn from the undisputed facts." *Busey Bank*, 304 Ill. App. 3d at 217. So, where the factual findings are correct or if we determine they are not against the manifest weight of the evidence, we determine whether it was reasonable for the trial court to reach its ultimate ruling based on its factual findings.

¶ 31    Neither Skyline nor Shamrock takes issue with any of the trial court's underlying factual findings. Thus, we need not review the factual findings, but decide whether the trial court's contempt order constitutes an abuse of discretion.

¶ 32    As to the underlying discovery orders, Skyline argues that our standard of review should be *de novo* because our review requires interpretation of constitutional provisions and construction of Illinois Supreme Court Rules. We disagree. Theoretically, discovery disputes between private parties involve a constitutional component. See *Kaull v. Kaull*, 2014 IL App (2d) 130175, ¶ 37 (noting "number of Illinois cases where reviewing courts have applied the fourth amendment to discovery orders in civil cases between private parties"). But where the pertinent discovery rule provides "requirements of relevance and reasonableness" and the parties have the benefit of judicial oversight, the rule also complies, by definition, with the fourth amendment and to the privacy clause of the Illinois Constitution. *Id.* ¶¶ 45, 47.

¶ 33    Our task, then, is not to interpret the discovery rules for their compliance with the constitution; instead, we review the trial court's application of those rules. Thus, we review the trial court's discovery orders for an abuse of discretion. *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 13.

¶ 34                                    *Scope of Discovery*

¶ 35    Illinois Supreme Court rules allow for broad discovery "regarding any matter relevant to the subject matter involved in the pending action." Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2014). Relevant evidence means evidence having *any* tendency to make the existence of a fact in issue more or less probable. *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107, ¶ 34. Skyline claims that Shamrock's requests sweep in irrelevant information. Shamrock seeks "customer, vendor and supplier identities, pricing information, purchase and sales orders, invoices and transactional history, and general accounts payable, accounts receivable, and other business financials." These materials bear on several counts in Shamrock's first amended complaint that allege Skyline (including in its formation) destroyed or misappropriated "Emails; Quickbook files; Accounts Receivable; Accounts Payable; Client lists; Supplier invoices and pricing; Formula lists, and client histories." Shamrock cannot prove that Skyline took its financial and client records without access to the current state of those records. That is discernibly relevant.

¶ 36    The cases Skyline cites are not to the contrary. The Illinois Supreme Court has said that "no right is given to compel the submission of records to a general inspection and examination,

for fishing purposes or with the view of finding evidence to be used in other suits or prosecutions." *Firebaugh v. Traff*, 353 Ill. 82, 85 (1933). There, however, the parties against whom a subpoena had been issued "were not necessary or proper parties" to the litigation. *Id.* Of course, Skyline is the party alleged to have stolen Shamrock's business and financial records.

¶ 37    Skyline's citation to *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, is unavailing as well. In pursuit of a motion to substitute judge, the plaintiff served a subpoena on the court reporting company that included a forensic examination of the court reporter's audio recorder and laptop. *Id.* ¶ 16. The trial court allowed the parties to listen to the audio from the disputed proceeding and quashed the subpoena in all other respects. *Id.* ¶ 17. We affirmed, finding the request for forensic examination to be nothing more than a fishing expedition. *Id.* ¶ 40. Our analysis, however, focused on the transcript of the disputed hearing matching the audio recording; no other evidence supported a claim that the recording or transcript had been altered. *Id.* Accordingly, the discovery allowed by the trial court—the playing of the audio—refuted the plaintiff's claim of fraudulent alteration of the transcript. In contrast, nothing in the record refutes Shamrock's claims of misappropriation of business and financial records.

¶ 38    Moreover, we reject Skyline's "fishing expedition" characterization. We borrow an analogy from another case cited by Skyline: "A party may not dredge an ocean of *** electronically stored information and records in an effort to capture a few elusive, perhaps non-existent, fish." (Internal quotation marks omitted.) *Carlson v. Jerousek*, 2016 IL App (2d) 151248, ¶ 65. Shamrock, however, does not allege that Skyline merely hooked a few yet-unknown fish; Shamrock alleges that Skyline drained the ocean. The production of bank records and QuickBooks files directly relates to records Shamrock claims stolen by Skyline.

¶ 39                                   *Appointment of Venetos*

¶ 40    Skyline argues there was "no basis in law" for the trial court to appoint someone to supervise discovery. But the discovery rules provide the trial court with broad authority to control discovery. The purpose of the discovery rules is "to be flexible and adaptable to the infinite variety of cases and circumstances appearing before the trial court." *Doe 1 v. Board of Education of the City of Chicago*, 2017 IL App (1st) 150109, ¶ 16. As our supreme court has said of our discovery rules, "[p]rovisions permitting greater flexibility or conferring wider discretion would be difficult to formulate." *Monier v. Chamberlain*, 35 Ill. 2d 351, 355 (1966). Rule 201 tells the trial court that "on its own initiative without notice, the court may supervise all or any part of any discovery procedure." Ill. S. Ct. R. 201(c)(2) (eff. July 1, 2014). This is expansive language.

¶ 41    Skyline does not suggest that the trial court could not have ordered Skyline to produce the disputed records say for *in camera* examination. See *Youle v. Ryan*, 349 Ill. App. 3d 377, 381 (2004) (supervision of discovery "includes the authority to review discovery materials *in camera* to determine any possible relevance"). We see no impediment to the trial court assigning the specialized task to a neutral third party with the necessary expertise and competency. This course of action makes sense because the trial court ordered periodic updates of Skylines bank records and QuickBooks file, which Skyline had thus far refused to turnover. Appointing the facilitator helped ensure that the parties would not have to return to court every time Skyline made a new production.

¶ 42     The trial court also tailored its order appointing Venetos. The order limits discovery to Skyline's bank records and QuickBooks file. While stored electronically (see Ill. S. Ct. R. 201(b)(4) (eff. July 1, 2014)), this information is not of the type the drafters of our rules believed to be overly burdensome for parties to produce. Ill. S. Ct. R. 201(c)(3), Committee Comments (rev. May 29, 2014) (listing presumptively nondiscoverable types of electronically stored information). The limits placed on the material available to Shamrock set its request far apart from the discovery in *Carlson*, where the plaintiff attempted to use the discovery process to forensically image an entire computer—a procedure that was, under the facts there, overly broad and intrusive. See *Carlson*, 2016 IL App (2d) 151248, ¶¶ 63-66.

¶ 43     Moreover, Skyline may password protect and encrypt its files so that only Venetos has regular access. The order also incorporates the previously entered protective order and limits disclosure to "attorney's eyes only." The trial court properly made every effort to balance Shamrock's need for information with Skyline's concerns about privacy and competition.

¶ 44     Skyline has not cited a case as much as hinting that the trial court lacks authority to appoint a third party to assist in the supervision of complex and ongoing discovery. We read the broad language in our discovery rules, and the Illinois cases interpreting them, to find that the trial court did not abuse its discretion.

¶ 45     We also find assurance of the soundness of our conclusion in the Cook County circuit court rules. For example, Rule 20 allows the trial court to appoint a mediator "to assist in identifying the issues, reducing misunderstandings, exploring and clarifying the parties' respective interests and priorities, and identifying and exploring possible solutions that will satisfy the interests of all parties and thereby resolve some or all of the issues in dispute." Cook County Cir. Ct. R. 20.01 (Apr. 5, 2004). While the trial court did not invoke Rule 20, we point to this rule as an example of the extensive authority the trial court has to assistance overseeing its docket.

¶ 46     Examples of a facilitator in discovery appear in cases from other jurisdictions. See *Vorachek*, 461 N.W.2d at 584-85; see also, *e.g.*, *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 111-13 (D.N.J. 2006) (nature of litigation put too great a strain on docket and supervised party had repeatedly abused discovery process); *Pullen v. Walker*, 228 P.3d 158, 160 (Colo. App. 2008) (collecting cases).

¶ 47     The trial court only abuses its discretion when its decision is "arbitrary, fanciful, or unreasonable." *Doe 1*, 2017 IL App (1st) 150109, ¶ 15. Enlisting the assistance of a facilitator in discovery to help ensure the flow of voluminous, complex financial information between the parties, particularly where Skyline had been resisting discovery from the beginning, is not "arbitrary, fanciful, or unreasonable." See *id.*

¶ 48                                    *Vacatur of the Contempt Order*

¶ 49     Skyline argues that regardless of our conclusions about the trial court's underlying discovery orders, we should vacate the contempt citation. When a contemnor acts in good faith to test the validity of an order, generally, we will vacate the contempt citation even if we affirm the underlying order. *Klaine v. Southern Illinois Hospital Services*, 2014 IL App (5th) 130356, ¶ 41. In keeping with this line of precedent, we vacate the contempt order entered against Skyline.

¶ 50         Affirmed in part and vacated in part.

¶ 51         Cause remanded.