2023 IL App (2d) 220386-U
Nos. 2-22-0386 & 2-22-0387 cons.
Order filed May 16, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* Is.F. and Iv.F., Minors, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | |
| v. | ) | Nos. 20-JA-173, 20-JA-174 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee v. Cassandra M., | ) | Kathryn D. Karayannis, |
| Respondent-Appellant). | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Mother's attorney granted leave to withdraw where counsel demonstrated that there was no nonfrivolous issue to raise on appeal.

¶ 2    Respondent, Cassandra M., appeals from the trial court's orders finding her unfit and terminating her parental rights over, Is.F. and Iv.F. (Cassandra filed separate appeals for each case, which we have consolidated for purposes of review.) The children have the same father, I.F.; however, he signed an irrevocable consent to adoption and his rights are not at issue in this appeal.

¶ 3    Cassandra's court-appointed appellate counsel has moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), stating that he has read the record and concluded there exist no

issues of arguable merit to be raised on appeal. See *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). We conclude that this appeal lacks arguable merit as set forth in counsel's memorandum. Therefore, we grant counsel's motions and affirm the trial court's judgments.

¶ 4                                I. BACKGROUND

¶ 5     For context, we note that this case was opened in October 2020 during the COVID-19 pandemic and that the proceedings occurred through online hearings. This became something of an issue for Cassandra, who was in Texas for the proceedings, as explained below.

¶ 6     This case came to the court's attention through a hotline complaint to the Illinois Department of Children and Family Services (DCFS) in Aurora after Iv.F. was born. Specifically, it was reported that Cassandra did not engage in any prenatal care with Iv.F., and that Iv.F. was born exposed to "untreated sexually transmitted diseases." In addition, Is.F. (then, around age 2) presented with multiple bruises and abrasions on his face, shoulders, arms, and legs. Investigation revealed that Cassandra had repeatedly struck Is.F. Cassandra had been diagnosed with bipolar disorder, anxiety, and depression, but was not medication compliant or engaged in any psychological services. In addition, at the time, Cassandra had recently lost custody over Is.F.'s and Iv.F.'s older sibling in Harlingen, Texas, where authorities learned that the child had suffered a skull fracture while in Cassandra's care. DCFS took protective custody of Is.F. and Iv.F. Both Cassandra and the children's father stipulated to the State's evidence at the shelter care hearing, and the court found probable cause to believe the children were neglected.

¶ 7     Immediately after the court entered its orders, Cassandra engaged in an online colloquy with the trial court judge. From Texas, Cassandra berated DCFS caseworkers, Texas authorities, the foster parents, and the trial court judge. Cassandra asserted that any claims of abuse were "lies" and that her children were "happy" in her care. Cassandra demanded that Is.F. and Iv.F. be returned

so that she and the children could move to Texas. The trial court judge carefully explained that she had found probable cause and entered orders for the minors' temporary guardianship and custody. The court explained that Cassandra was free to move wherever she liked, but that she could not take the children with her.

¶ 8     At a subsequent hearing, Cassandra stipulated to the factual basis for the State's neglect petition. The children were adjudicated neglected, Cassandra was found unable or unfit to care for them, and they were made wards of the court.

¶ 9     Cassandra's service plan called for her to engage in parenting education classes, parent coaching, individual therapy, domestic violence services, substance abuse evaluation and screening, a mental health evaluation, psychiatric treatment, probation services (the record indicates that Cassandra was on probation for an unspecified felony offense in Texas), housing and income verification, and visitation with the children. Cassandra reported that she had been engaged in random drug screening and unspecified services at a family crisis center in Texas; however, she refused to sign consents for the release of information, so her progress could not be verified. In addition, Cassandra stated that she had separated from the children's father and given birth to another child in Texas. The record does not indicate whether Cassandra has custody of the children's later-born sibling.

¶ 10    Meanwhile, Is.F.'s and Iv.F.'s condition improved significantly in foster care. Is.F.'s injuries healed and he was engaged in weekly psychological, developmental, and speech therapies. Iv.F. was doing well and did not require services. Cassandra had weekly virtual visitation with the children for 15 to 30 minutes at a time. Cassandra was mostly consistent with visitation, but it was reported that online visits were held while she was at work (her job is in sales), and she was often distracted and unfocused after the first five minutes. It was suggested that visits occur when

Cassandra was not at work, but Cassandra refused that accommodation. In May 2022, the court granted the State's request to change the children's permanency goal to substitute care pending the termination of parental rights.

¶ 11    At the close of the hearing where the goal was changed, the record indicates that Cassandra voiced her displeasure with the court's decision. The trial court judge stated that Cassandra had been serially disruptive, often making faces and using inappropriate language, to which Cassandra replied, "What is not appropriate is taking my kids from me too when I have done everything." The court noted that Cassandra's conduct online had been disruptive since the very beginning of the case, which included using her phone and appeared to be communicating with others during these closed confidential juvenile proceedings. The court stated that it would no longer permit Cassandra to appear remotely and would require her to appear in person at all future proceedings, in part so that she could be held in direct contempt if necessary. The court then removed Cassandra from the Zoom hearing that day.

¶ 12    The State filed a four-count petition alleging that respondent was unfit because (1) she failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare (750 ILCS 50/1(D)(b) (West 2020)); (2) failed to protect the children from conditions within their environment that were injurious to their welfare (*id.* § 1(D)(g)); (3) failed to make reasonable efforts to correct the conditions that were the basis for removal during a specified nine-month period (*id.* § 1(D)(m)(i)), and; (4) failed to make reasonable progress towards the children's return to her care during a specified nine-month period (*id.* § 1(D)(m)(ii)).

¶ 13    At a pretrial hearing on the State's petition, the court noted that someone with Cassandra's name was in the virtual lobby waiting to access the hearing. The court declined to permit access based on its prior order that Cassandra appear in person. Cassandra's counsel was present for the

hearing. Trial counsel asked the court to reconsider remote attendance, and the court denied that request. The court explained that it understood it was a financial hardship to attend in person, but again reiterated that Cassandra's behavior online was uncontrolled, inappropriate, and detrimental to the orderly administration of justice.

¶ 14    At a second pre-trial conference, the court noted that Cassandra had again attempted to appear via Zoom. The court attempted to allow Cassandra into the conference to reiterate that she must appear in person, but neither her audio nor video connection was stable. Despite the court's willingness to speak with Cassandra remotely, it ultimately could not be accomplished, and the court exercised its discretion to continue the case with the requirement that Cassandra appear in person.

¶ 15    On the date of trial, Cassandra's counsel renewed his request that Cassandra be permitted to appear remotely. The court noted that trial was scheduled for 1:30 p.m.; it was 1:40 p.m. and Cassandra was not in the waiting room for the hearing. With that, the court denied counsel's request and the trial commenced. After trial, the court found Cassandra unfit on each of the grounds alleged in the State's petition.

¶ 16    At a subsequent best-interests hearing, the court terminated Cassandra's parental rights over Is.F. and Iv.F. This appeal followed and the trial court appointed appellate counsel.

¶ 17                                    II. ANALYSIS

¶ 18    As noted, appellate counsel seeks leave to withdraw. Counsel supported his motion with a memorandum of law providing a statement of facts, potential issues, and argument as to why those issues lack arguable merit. Counsel served Cassandra with a copy of the motion and memorandum. We advised Cassandra that she had 30 days to respond to counsel's motion. That time has passed, and no response was filed.

¶ 19    In his motion, counsel states that he advised Cassandra via e-mail and telephone consultations that there were four potential appellate issues for consideration. We agree with counsel that none of these issues has arguable merit.

¶ 20    First, respondent complained of a lack of communication with her appointed trial attorney. While the Public Defender's Office represented both respondent and I.F., the children's father,, the record shows that Cassandra was consistently represented by the public defender, whether respondent was present in person or on Zoom or was not present. Cassandra never complained that counsel was not responsive to her, nor did she express dissatisfaction to the court with trial counsel's representation. In addition to consistent advocacy, the record shows no procedural errors by counsel. Although Cassandra advised appellate counsel that she would provide "multiple examples of unanswered emails that would establish her counsel's inattention to her case and her pleas for assistance," none were provided.

¶ 21    Given the record of trial counsel's advocacy, and the lack of evidence to determine otherwise, we agree with appellate counsel that there is no reasonable basis for a finding that trial counsel was ineffective. See *Strickland v Washington,* 466 U.S. 668, 104 (1984). Therefore, appellate counsel did not err in declining to advance this issue.

¶ 22    Next, respondent asserts that as she and I.F. were residents of Texas, only living in Illinois visiting family and for seasonal work at the time the children were brought into care, their cases should have been transferred to Texas. Venue, however, was proper in Kane County, Illinois, since the minors were living with their parents in Kane County and were "found" there by DCFS. 705 ILCS 405/2-2(1) (West 2022) ("Venue under this article lies in the county where the minor resides or is found."). Thus, even if the minors were somehow moved to Texas, it is beyond argument that jurisdiction would still remain in Illinois. See 45 ILCS 15/1 (West 2022). Accordingly, we agree with appellate counsel that respondent's improper venue argument is frivolous and without merit.

¶ 23    The third issue identified by counsel is Cassandra's concern that she was denied participation in court proceedings via Zoom. Again, court proceedings were held via Zoom due to the COVID-19 pandemic. Respondent continued to appear via Zoom after electing to return to Texas around the beginning of 2021. The court found, however, that respondent's behavior during Zoom proceedings was "disruptive," "disrespectful," and "inappropriate," and the court entered an order requiring her to appear in person at future hearings. Critically, the record reflects that Cassandra was either unwilling or unable to participate remotely at the unfitness hearing and was not present when the hearing started.

¶ 24    "A court has broad discretion to determine if video participation is appropriate for a particular case" (Ill. S. Ct. R. 241 (eff. 2022) (Committee Comments (adopted May 22, 2020)), and it is axiomatic that "[a] trial court has the inherent authority to control matters before it as necessary to prevent undue delay or disruption in the proceeding" (*In re L.S.*, 2022 IL App (1st) 210824, ¶ 111). This court and others have been sensitive to the due-process concerns engendered by the use of remote proceedings during the pandemic, particularly in termination cases. See, *e.g.*, *In re H.B.*, 2022 IL App (2d) 210404, ¶¶ 44-75. That said, we have carefully evaluated the record and concur with appellate counsel's assessment that the trial court did not abuse its discretion. The court gave Cassandra multiple opportunities to conform her conduct to the behavior expected of litigants in these proceedings. The record shows that Cassandra's conduct in her remote appearances was detrimental to the fair administration of justice. Further still, despite multiple notifications and admonishments regarding the date and time of the unfitness hearing, Cassandra was not present and apparently chose not to appear in any form whatsoever. Her failure to appear for the hearing—like her failure to release records of her claimed compliance with court-ordered services—can only be considered a voluntary choice on her part rather than a reflection on the trial court's exercise of its discretion.

¶ 25    Finally, counsel noted that it would be meritless to argue that the minors were improperly placed in foster care while in DCFS custody. The record reflects that at the time of shelter care, she

and I.F. were advised that DCFS decides where the minors are placed and that they should provide DCFS with the names of anyone that they would like DCFS to consider. According to appellate counsel, Cassandra stated that she wanted the children placed with their "godparents" in Texas, but that was simply not her decision to make. Moreover, there is nothing in the record that suggests Cassandra expressed her wishes to DCFS, and the Department was well within its rights to decline an out-of-state placement. Given the authority delegated to DCFS and the court's admonishment, we agree with counsel that this was not a meritorious issue for appeal.

¶ 26                                III. CONCLUSION

¶ 27    After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Kane County. We note that appeal was accelerated under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Pursuant to that rule, the appellate court must, except for good cause shown, issue its decision in an accelerated case within 150 days of the filing of the notice of appeal (Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018)), in this case, March 27, 2023. Appellate counsel received an extension of time to prepare and file the record on appeal, then moved for leave to withdraw as respondent's counsel; respondent received 30 days to respond to counsel's motion for leave to withdraw, all of which took us beyond the 150-day deadline. Given these circumstances, we find good cause for this decision to be issued after the time frame mandated by Rule 311(a) as "the 150-day timeframe must be subordinate to the justice this case deserves." *In re Zy. D.*, 2021 IL App (2d) 200629, ¶ 17.

¶ 28    Affirmed.