2024 IL App (1st) 240206-U

FIRST DISTRICT,
SIXTH DIVISION
December 6, 2024

No. 1-24-0206

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| EDWIDGE PHILIZAIRE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 21 D 650673 |
| | ) | |
| CEDRIC ROBINSON, | ) | Honorable |
| | ) | Doretha Renee Jackson, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Vacatur of the direct civil contempt order and remand is required for the circuit court to enter an appropriate order, if necessary, that complies with applicable requirements.

¶ 2     Defendant Cedric Robinson appeals from the circuit court's order finding him in direct civil contempt for recording Zoom court proceedings on January 19, 2024. We vacate the order of contempt entered on January 25, 2024, and remand the matter to the trial court for purposes of

entering an appropriate order, if necessary, commensurate with Robinson's conduct and due process rights.

¶ 3                                    I. BACKGROUND

¶ 4        Robinson and Edwidge Philizaire have never been married but are parents of three children. In January 2022, they filed cross-petitions for allocation of parental responsibilities and parenting time. On January 19, 2024, the trial court held a remote court hearing via Zoom on various outstanding issues related to the parties' petitions. Robinson appeared *pro se*. At the start of the hearing, the court admonished the parties: "During your time today in the virtual courtroom, it is expected that you will be in a room allowing no one else to be within earshot of your device. You may not record today's session, take pictures or screenshots."

¶ 5        In the middle of the hearing, the following colloquy occurred:

"CHILD REPRESENTATIVE: Your Honor, while you were gone, there was a recording of something you said earlier of something before the proceedings started.

THE COURT: There was a recording?

CHILD REPRESENTATIVE: We just heard it just now when you said, 'Mr. Robinson, be on the lookout for your invitation to the breakout room,' that just came through.

ROBINSON: Your Honor, that's me. I am trying to access the laptop. I'm sorry. I don't know why that she's trying to make up anything she can."

¶ 6        The court asked Robinson whether he was recording, to which he replied:

"No, no, no, I was trying to access my phone so I am trying to get on with my laptop so I won't lose anything. I'm not doing anything nefarious or anything, trying to record anything. I'm actually—so I won't lose anything because right now it's stuck on the

email. I'm not going lose anything on my phone, so I'm trying to access it where I'm on my laptop."

¶ 7 The court reporter stated that "there still is something going on in the background overriding what's happening," and Philizaire's counsel said, "I can clearly hear my voice in some recording right now." Robinson again denied recording the proceedings and stated, "That's an echo, your Honor."

¶ 8 The court responded: "That is not an echo because it's something that was previously said with what is contemporaneously said." The court added:

> "Not only did the attorneys as officers of the court report the recording they heard, I myself heard the recording, and again, it was not as you might call it, it was not an echo, it was not a bounce back. It was something that [the child representative] said well before we even got to that point in time."

¶ 9 The court made an oral finding of direct civil contempt against Robinson, stating: "[I]t is clear that you have been recording the sessions. *** It is clear that you are in violation of the admonishment that I gave before we started of [not only] the rule of this Court, but the rules of the Circuit Court of Cook County." When Robinson interrupted to say he was not recording, the court said "[s]top," and did not let him speak. The court told Robinson: "[Y]ou have lost the privilege of participating in court proceedings via Zoom until further order of court. *** [T]here's only one way I know to clear this up in the future, and that is that you be in open court or the Zoom Room."

¶ 10 No order was entered on January 19, 2024, but on January 25, 2024, the trial court entered a written order holding Robinson in direct civil contempt based upon its finding that Robinson, "after having been admonished by this Honorable Court to refrain from recording any

part of the proceedings, and in violation of Administrative Order 2020 D 21 Amended,[1] has knowingly, willfully, and contumaciously, recorded the proceedings, and after his recording played back in open court for the judge, Child Representative, Counsel for [Philizaire] and [Philizaire] to hear, he denied making such recording. Therefore, over his objection, [Robinson] is found to be in direct civil contempt." The court ordered as follows:

"1. Respondent, CEDRIC ROBINSON, is hereby prohibited from participating via Zoom for any future court date related to this matter before this Honorable Court.

2. If the judge must conduct court via Zoom ***, CEDRIC ROBINSON must report to the Zoom Room of the Cook County Courthouse (The Daley Center) to conduct his Zoom appearance under the supervision of court personnel."

¶ 11 Robinson appeals the trial court's contempt order pursuant to Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016) (permitting appeal from "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty").

¶ 12 II. ANALYSIS

¶ 13 Contempt of court is "conduct that is calculated to impede, embarrass, or obstruct the court in its administration of justice or derogate from the court's authority or dignity, or to bring the administration of the law into disrepute." (Internal quotation marks omitted.) *People v. Geiger*, 2012 IL 113181, ¶ 26. "A court is vested with inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings." *People v. Warren*, 173 Ill. 2d 348, 368 (1996). "[S]uch power is essential to the maintenance of their authority and the administration of judicial powers." *People v. Simac,* 161 Ill. 2d 297, 305 (1994). We will not disturb the circuit

---

[1] Administrative Order 2020 D 21 Amended provides that no screenshots or audio/video recording are allowed in remote court proceedings in the domestic relations division.

court's exercise of its contempt power unless the circuit court's factual findings are against the manifest weight of the evidence or the contempt order is an abuse of discretion. *Shamrock Chicago Corp. v. Wroblewski*, 2019 IL App (1st) 182354, ¶¶ 28-29.

¶ 14　　　*In re Marriage of Betts*, 200 Ill. App. 3d 26 (1990), is the seminal case that sets forth in detail the differences between direct and indirect contempt and civil and criminal contempt. Direct contempt is contemptuous conduct which occurs in the actual or constructive presence of a judge and is limited to actions seen and known by the judge. *Id.* at 47. "[A] direct contempt charge may be resolved summarily without formal pleadings, notice, or a hearing, as the alleged conduct was witnessed firsthand by the judge." *Windy City Limousine Co. LLC v. Milazzo*, 2018 IL App (1st) 162827, ¶ 41. Indirect contempt includes all contempts that do not occur in open court or in a constituent part of the court, such that the judge does not have full personal knowledge of all elements of the contempt. *Betts*, 200 Ill. App. 3d at 48.

¶ 15　　　Civil contempt is imposed for coercive purposes, *i.e.*, to compel the contemnor to perform a particular act. *Id.* at 44. The fundamental attributes of civil contempt are that (1) the contemnor can take the action sought to be coerced and (2) no further sanctions are imposed on the contemnor after his compliance with the pertinent court order. *Id.* In contrast, criminal contempt generally arises from a prohibited act and is designed to punish past conduct instead of coercing compliance. *Id.* at 46. "The most readily recognizable examples of direct contempt are criminal contempts consisting of outbursts during court proceedings or other disruptions of judicial proceedings." *Id.* at 47.

¶ 16　　　Here, the trial court found Robinson in direct civil contempt for recording Zoom court proceedings in contravention of the court's express admonishment and in violation of Administrative Order 2020 D 21 Amended, which prohibits recording of remote court

proceedings in domestic relations proceedings. Although the trial court labeled Robinson's misconduct as civil contempt, the unauthorized recording of a Zoom proceeding could be civil or criminal or both, depending on the dominant purpose for which sanctions are imposed. *Id.* at 46-47 ("[T]he same conduct may form the basis for both criminal and civil contempt sanctions. *** [T]he test *** is the dominant purpose for which sanctions are imposed.").

¶ 17        Criminal sanctions are punitive and retrospect in nature, whereas civil sanctions are coercive and prospective in nature. *Id.* at 46. Accordingly, a civil contempt order must contain a purge provision, which is often described as "the keys to the cell," so that the contemnor knows what steps they must take to purge themself from their contempt. The absence of a purge provision is fatal to a civil contempt order. *Pancotto v. Mayes,* 304 Ill. App. 3d 108, 112 (1999).

¶ 18        It is clear from the court's statements on January 19, 2024, that it intended to impose civil contempt sanctions designed to coerce Robinson to refrain from recording future court proceedings: "[T]here's only one way I know to clear this up in the future, and that is that you be in open court or the Zoom Room." The problem is the contempt order does nothing to cure Robinson's past violation of the court's prohibition on recording and fails to include a purge provision upon which Robinson's contempt may be dissolved (*e.g.,* by restricting his use of Zoom until he apologized, agreed in the future to abide by the court's orders, deleted the recording, or demonstrated good behavior after a set number of court appearances). We realize the court said in open court that Robinson lost the privilege of Zoom "until further order of Court," but the written order does not specify this caveat and fails to set forth the terms upon which Robinson may purge his contempt.

¶ 19        "A valid purge *** serves a curative purpose, not a prophylactic one." *Edwards v. Pekin Memorial Hosp.,* 2023 IL App (3d) 210005, ¶ 42. Because the contempt order does not provide

Robinson with the proverbial "keys to his cell" so he can purge himself from civil contempt and Zoom from wherever he wants in the future, we must vacate the order. See *id.* (vacating civil contempt order that did not contain a purge provision); *City of Chicago v. Bryan*, 2022 IL App (1st) 211074 (same); *In re A.M.*, 2020 IL App (4th) 190645 (same); *In re Marriage of Knoll,* 2016 IL App (1st) 152494 (same); *Pancotto,* 304 Ill. App. 3d at 112 (same).

¶ 20        Despite having to vacate the contempt order, we have no doubt about a court's power to impose contempt sanctions for surreptitiously recording a court proceeding. However, the nuances of contempt require the court to adhere to the specific rules of procedure for different types of contempt to protect the rights of the contemnor.

¶ 21        Short of contempt, in civil trials and evidentiary hearings, "[a] court has broad discretion to determine if video participation *** [is] appropriate for a particular case." Ill. S. Ct. R. 241, Committee Comments (rev. Feb. 2, 2023); see also Ill. S. Ct. R. 45(b)(1) (eff. Jan. 1, 2023) ("in the exercise of the judge's discretion, [the judge may] require a case participant to attend a court proceeding in person for reasons particular to the specific case, including the failure of a case participant to follow applicable standards of decorum"). For instance, in *In re Is.F.*, 2023 IL App (2d) 220386-U, ¶¶ 23-24, we held the trial court acted within its discretion in requiring the respondent to appear in person at court hearings due to her "disruptive," "disrespectful," and "inappropriate" behavior during Zoom proceedings. This inherent power is essential to maintaining proper courtroom decorum and administering fair justice in remote court proceedings.

¶ 22        Based on the record and trial court's findings of fact that Robinson violated the prohibition on recording remote court proceedings, we have no quarrel with the court exercising its discretion to put guardrails on Robinson's use of Zoom and imposing sanctions if necessary, so long as the order is clear and comports with the applicable legal and procedural requirements. Thus, while we

vacate the contempt order, we remand the matter for further proceedings, allowing the court, in its discretion, to enter the type of order (if any) it deems appropriate, but encouraging the court to give Robinson a second chance to demonstrate compliance with the court's admonishment and applicable rules governing remote court proceedings in this case. See Ill. S. Ct. R. 45 (eff. Jan. 1, 2023); R. 241 (eff. Feb. 2, 2023); Administrative Order 2020 D 21 Amended (prohibits recording of remote court proceedings in domestic relations matters); Cook County Cir. Ct. G.A.O. 2023-03(7)(f) (Apr. 18, 2023) (prohibits recording of remote court proceedings without permission of the court); Remote Court Proceedings, https://www.cookcountycourt.org/about/remote-court-proceedings (last visited Nov. 26, 2024) (recording remote court proceedings "is strictly prohibited and could subject you to contempt of court and/or other penalties").

### III. CONCLUSION

¶ 23    For the foregoing reasons, we vacate the direct civil contempt order and remand for further proceedings.

¶ 24    Vacated and remanded.